# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
BRIAN AVERY SMITH,                                )
                                                  )
                            Plaintiff,            )
            v.                                    )          Civil Action No. 15-0206 (BAH)
                                                  )
JEFF SESSIONS, *et al.*,                          )
                                                  )
                            Defendants.[1]        )
———————————————————— )

## MEMORANDUM OPINION

This matter is before the Court on the FBI's Motion to Dismiss or, in the Alternative, for

Summary Judgment, ECF No. 28.  For the reasons discussed below, the motion will be granted.

### I. BACKGROUND

At the time the plaintiff filed his complaint and amended complaint, he was "a federal

pretrial detainee," Am. Compl., ECF No. 8, at 3 (page numbers designated by ECF), facing

criminal charges in the United States District Court for the Western District of New York arising

from "a scheme to defraud Pentagon Federal Credit Union ('Penfed') and [to] knowingly obtain

money, funds, credits, owned by and under the custody and control of Penfed by means of false

and fraudulent pretenses in violation of 18 U.S.C. §§ 1344(1) and 1344(2)," Mot. for Order

Preserving Certain Exemptions, and Mem. of P. & A. in Support Thereof, ECF No. 20, Decl. of

David M.  Hardy ("First Hardy Decl.") ¶ 26.  "On September 22, 2015, the plaintiff [pled] guilty

to Count 1 of the Second Superseding Indictment, charging a violation of 18 U.S.C. § 1344."

_____

[1]  Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes the current Attorney General of the United States as a defendant in this case.

First Hardy Decl. ¶ 26.  On June 28, 2016, the defendant was sentenced to a 63-month term of imprisonment followed by a five-year term of supervised release.  *See* Judgment in a Criminal Case, *United States v. Smith*, No. 1:13-cr-0084 (W.D.N.Y. June 30, 2016).  Plaintiff filed an appeal on July 7, 2016.  Notice of Filing, ECF No. 26, Second Decl. of David M. Hardy ("Second Hardy Decl.") ¶ 6.  "[T]here are additional conspirators who have been charged and awaiting trial," and "the overall investigation remains pending."  *Id*. ¶ 7; *see* First Hardy Decl. ¶ 27.

In October 2014, the plaintiff submitted a FOIA request to the FBI, Am. Compl. at 3, for "all files in [its] possession . . . regarding . . . Brian Avery Smith," First Hardy Decl., Ex. A at 1.  A search of the FBI's Central Records System, *see id*. ¶¶ 22-23, yielded "one main file indexed to [the] plaintiff's name . . . along with multiple cross-references."  *Id*. ¶ 23.

The FBI assigned the matter a tracking number, FOIPA Request Number 1303815-000.  *Id*. ¶ 4.[2]  It initially denied the plaintiff's request on the ground that the main file was exempt from disclosure under Exemption 7(A).  *Id*. ¶¶ 4, 23.[3]  After the plaintiff filed this lawsuit, FBI staff "re-ran [the] search[] to confirm its results," and "located a file related to prior civil litigation that [the] plaintiff brought against the FBI."  Second Hardy Decl. ¶ 16.  By letter dated August 25, 2015, the FBI asked whether the plaintiff "would like to receive copies of records from this civil litigation file (identified . . . by the 197 file classification or as the '197 file')."  *Id*.[4]  In addition, the FBI notified the plaintiff that it had "located two responsive cross-references to [the] plaintiff in other investigative files."  *Id*.

---

[2]  Two paragraphs are designated "(4)" in the First Hardy Declaration, and these references are to the second on page 3 of the declaration.
[3]  Two paragraphs are designated "(4)" in the First Hardy Declaration, and these references are to the second on page 3 of the declaration.
[4]  Since "such files consist[] of pleadings and materials for public court dockets and/or documents that plaintiff would otherwise have copies of, . . . the FBI normally seeks explicit confirmation that a requester wants such records, in order to reduce costs and processing time."  Second Hardy Decl. ¶ 17.

The plaintiff responded by asking the FBI to "process [his] FOIA request, based on the letter [he] received . . . dated August 25, 2015." First Hardy Decl., Ex. K at 2. The FBI interpreted the plaintiff's response "as confirmation that [he] wanted copies from [the] 197 file." *Id.* ¶ 17. FBI staff "processed all 15 pages of responsive records from the 197 (civil litigation) file and the two cross-references to [the] plaintiff in other investigative files." *Id.* ¶ 18. "On October 28, 2015, the FBI released all 15 pages . . . in full or in part, with certain information redacted pursuant to FOIA Exemptions [5, 6, 7(A), 7(C), and 7(E)]." *Id.* Lastly, on June 5, 2016, the FBI released, in full, 153 pages of records "from the pending investigation files, representing all reasonably segregable, non-exempt information in the files." *Id.* ¶ 21. It maintained that the remaining records were protected under Exemption 7(A) and other exemptions, and withheld these records in full. *Id.*

The FBI filed its motion to dismiss or, alternatively, for summary judgment on September 13, 2016. On September 26, 2016, the Court issued an Order advising the plaintiff of his obligations under the Federal Rules of Civil Procedure and the local civil rules of this Court. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988). Specifically, the Court notified the plaintiff that, if he failed to file an opposition or other response to the defendants' motion by October 27, 2016, the Court would treat the defendants' motion as conceded. *See* Local Civil Rule 7(b) (permitting court to "treat . . . as conceded" a motion not met with a timely opposing memorandum of points and authorities). On the plaintiff's motion, the Court twice extended his deadline, most recently to February 21, 2017. To date, the plaintiff has not filed an opposition to the motion or requested more time to file an opposition.

Under these circumstances, the Court ordinarily would have granted the FBI's motion as concded. The United States Court of Appeals for the District of Columbia Circuit recently has raised concerns, however, about the use of Local Civil Rule 7(b) to grant an unopposed motion for summary judgment. *See generally Winston & Strawn, LLP v. McLean*, 843 F.3d 503 (D.C. Cir. 2016). Despite acknowledging the value of Local Civil Rule 7(b) as an important "docket-management tool that facilitates efficient and effective resolution of motions," *Cohen v. Bd. of Trustees of the Univ. of the District of Columbia*, 819 F.3d 476, 48 (D.C. Cir. 2016) (quoting *Fox v. Am. Airlines, Inc*., 389 F.3d 1291, 1294 (D.C. Cir. 2004) (additional citation omitted)), the rule "cannot be squared with Federal Rule of Civil Procedure 56," *Winston & Strawn*, 843 F.3d at 506. If the Court were to grant the FBI's motion for summary judgment as conceded, it erroneously would shift the burden to the plaintiff when "[t]he burden is always on [the defendant] to demonstrate why summary judgment is warranted." *Id*. at 505. The Court "must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (citation omitted) (Griffith, J., concurring).

## II. LEGAL STANDARD

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). The Court may award summary judgment based solely upon the information provided in an agency's supporting affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III. DISCUSSION

In evaluating the FBI's motion, the Court considers the adequacy of the search for responsive records, the proffered justifications for the FBI's withholding of responsive records, and the sufficiency of the agency's segregability review. Each of these issues is addressed below.

### A. The FBI's Search for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485 (citing *Weisburg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.D.C. 1983)).

The FBI's declarant explains at length the FBI's recordkeeping systems, *see* Second Hardy Decl. ¶¶ 22-28, and the means by which its staff conducted searches for records responsive to the plaintiff's FOIA request, *see id.* ¶¶ 29-31. Specifically, the declarant states that FBI staff initially conducted an index search of records maintained in the FBI's Central Records System using variations of the plaintiff's name, his aliases, the names of corporate entities associated with his activities, and other information provided in the FOIA request itself, *see id.* ¶¶ 29-30, and "identified one main file indexed to [the] plaintiff's name," *id.* ¶ 30. A search

conducted after the plaintiff filed this lawsuit "revealed the same main file it initially identified . . . , along with two cross-references to [the] plaintiff in other files and a 197 file related to previous civil litigation brought by [the] plaintiff against the FBI." *Id.*

An agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982), and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). Here, the FBI's declaration adequately demonstrates that the agency's searches were reasonably calculated to locate records responsive to the plaintiff's FOIA request.

### B.  Records Released In Part

The FBI has withheld information under Exemptions 5, 6, 7(A), 7(C), and 7(E) from the civil litigation file and the two cross-references.  Second Hardy Decl. ¶¶ 34-35.

### 1.  Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption "is interpreted to encompass . . . three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege."  *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002); *see Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 905 F. Supp. 2d 161, 173 (D.D.C. 2012) (citations omitted).  Relevant to this discussion are the attorney work product and attorney-client privileges.  *See* Second Hardy Decl. ¶¶ 41-43.

The FBI withholds "two-way communications between FBI attorneys and their clients" under Exemption 5. *Id.* ¶ 43. First, the FBI "protect[s] specific information in an FBI letterhead memorandum containing legal analysis and advice provided by the Chief Division Counsel's Office . . . in the Buffalo Field Office . . . about legal/litigation strategy" in the plaintiff's prior civil action. *Id.* ¶ 44; *see id.* ¶ 46. Second, it withholds an electronic communication containing the same type of information in order to protect the Chief Division Counsel's conclusions and "the FBI's request to the [Department of Justice] in regard to litigation strategy." *Id.* ¶ 45. The declarant explains that these "communications were made in confidence, were not shared with or circulated to individuals outside the attorney-client relationship, and were made for the purpose of securing legal assistance." *Id.* ¶ 46.

The Court concludes that the FBI properly withheld this information, which would be protected under attorney work product and the attorney-client privileges, under Exemption 5. *See NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975) (noting "that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5"); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253-55 (D.C. Cir. 1977) (protecting confidential "information . . . communicated to or by an attorney as part of a professional relationship in order to provide the Air Force with advice on the legal ramifications of its actions").

## 2. Exemption 6

"The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C)." Second Hardy Decl. ¶ 48. In this case, because all of the responsive records were compiled for law enforcement purposes and all of the information pertaining to third party individuals properly is withheld under Exemption 7(C), the Court need not consider whether Exemption 6

applies to the same information.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir.

1994); *Williams & Connolly LLP v. Office of the Comptroller of the Currency*, 39 F. Supp. 3d

82, 89 (D.D.C. 2014) ("[B]ecause the Comptroller asserts that all of the relevant documents fall

within the ambit of Exemption 8, and since . . . the Court finds that the Comptroller properly

withheld the requested records pursuant to Exemption 8, it does not address Exemption 4 and

5.").

### 3. Exemption 7

#### a. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," 5 U.S.C. § 552 (b)(7), but only to the extent that disclosure would cause

an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  The FBI's declarant avers

that all of the responsive records were compiled for law enforcement purposes:

> Some of the responsive records processed and released in part by the
> FBI were compiled during or as a result of [its] criminal
> investigation of [the] plaintiff's bank and mortgage fraud in
> violation of 18 U.S.C. § 1344.  The remaining responsive records
> processed and released in part by the FBI were located in the file
> regarding [the] plaintiff's civil lawsuit against the FBI, which
> included records compiled by two Special Agents assigned to
> investigate several alleged frauds perpetrated by [the] plaintiff in
> January 2012.

Second Hardy Decl. ¶ 50.  The FBI easily meets its burden, and the Court concludes that all of

the responsive FBI records were compiled for law enforcement purposes and fall within the

scope of Exemption 7.

#### b. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(7)(C).  "In deciding whether the release of particular information constitutes an

unwarranted invasion of privacy under Exemption 7(C), [the Court] must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation marks and citation omitted); *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).

The FBI withholds the names of and identifying information about FBI Special Agents, Second Hardy Decl. ¶ 54, other FBI employees, *id.* ¶ 55, the Assistant United States Attorney assigned to a case, *id.* ¶ 58, third parties of investigative interest to the FBI, *id.* ¶ 62, third parties merely mentioned in the criminal investigative records, *id.* ¶ 66, and the victims of the plaintiff's bank and mortgage fraud schemes, *id.* ¶ 70. In no instance does the FBI identify a public interest to outweigh the privacy interests of these individuals. *See id.* ¶¶ 56-57, 59-61, 63-65, 67-69, 71-73. The plaintiff has not met his burden to articulate a public interest sufficient to outweigh any individual's privacy interest, *see Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004), and the Court identifies none. Therefore, the Court concludes that the FBI properly has withheld third party information under Exemption 7(C). *See, e.g., SafeCard Servs.*, 926 F.2d at 1206 ("hold[ing] categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure"); *see also Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir.

2011) ("As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information.").

### c. Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "Exemption 7(E)'s requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'"  *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 204-05 (D.C. Cir. 2014) (quoting *Blackwell*, 646 F.3d at 42).

The FBI withholds "the internal non-public web address for its Sentinel [case management] system," Second Hardy Decl. ¶ 79; *see id*. ¶ 28, on the ground that its release "would provide criminals with potential targets for cyber attack," *id*. ¶ 79.  Its declarant explains that, "[g]iven the web address, criminals [could] access the FBI's computer system [and] disrupt or undermine certain FBI investigation/investigative programs," for example, by deleting or corrupting Sentinel data.  *Id*.  The FBI thus clears its relatively low bar by demonstrating that release of the internal Sentinel web address increases the risk "that a law will be violated or that past violators will escape legal consequences."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).  The Court concludes that the FBI properly withholds the Sentinel web address under Exemption 7(E).  *See, e.g., Tracy v. U.S. Dep't of Justice*, No. 15 CV 655, 2016 WL 3248185, at *9 (D.D.C. June 10, 2016) (withholding address of internal FBI website), *aff'd*, No.

16-5187, 2016 WL 7335664 (D.C. Cir. Dec. 9, 2016); *Qatanani v. Dep't of Justice*, No. 12 CV 4042, 2015 WL 1472227, at \*14 (D.N.J. Mar. 31, 2015) (withholding "an internal secure website address in order to prevent individuals from compromising its computer system that is essential to its law enforcement decisions").

### 4. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999) (citation omitted). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

On review of all of the FBI's supporting declarations, the Court concludes that the defendant adequately has specified "which portions of the document[s] are disclosable and which are . . . exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

### C.  Records Withheld In Full

The Court granted defendant leave to move for summary judgment based on the applicability of Exemption 7(A) alone without waiving its right to assert that information in these same records may be exempt from release for another reason.[5] The Court declines to address the

---

[5]   On one page of the records released in part to the plaintiff appears "the file number of the pending investigation," and the FBI has redacted it under Exemption 7(A). Second Hardy Decl. ¶ 76. The declarant explained that its release "could . . . result in the acknowledgement of the existence of a particular investigation [and] the identification of suspects, thus jeopardizing the investigation and prosecution of [those] suspects." *Id*. ¶ 77. The Court concludes that the FBI properly has redacted this file number.

FBI's decision to withhold information under Exemptions 3 and 7(D), *see generally* Second Hardy Decl. ¶¶ 94-107, at this time.

Exemption 7(A) protects law enforcement records "to the extent that [their] production . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).   The exemption contemplates enforcement proceedings that "are . . . pending or reasonably anticipated."  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis removed).

The FBI demonstrates that there are pending or anticipated law enforcement proceedings. First, the plaintiff has filed an appeal of his criminal conviction, *see id.* ¶ 6, and it qualifies as a pending or prospective law enforcement proceeding for purposes of Exemption 7(A), *see Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998).   Second, the declarant explains that the investigation referenced in the withheld records remains open and ongoing.  First Hardy Decl. ¶ 27; Second Hardy Decl. ¶ 7.  Even though the plaintiff has been sentenced, there are "additional conspirators who have been charged and are awaiting trial."  Second Hardy Decl. ¶ 7.

The withheld materials fall into one or two categories: (1) Evidentiary/Investigative Materials and (2) Administrative Materials.  *See* Second Hardy Decl. ¶¶ 83-84.  Category 1 "includes copies of records or evidence, analyses of evidence, and derivative communications discussing or incorporating evidence."  *Id.* ¶ 85.  Among these records is information "exchanged between the FBI and its law enforcement partners," the disclosure of which would reveal "criminal intelligence developed by various agencies [that] have cooperated with – and provided information and records to – the FBI in this ongoing investigation."  *Id.* ¶ 86.  Further, disclosure "would identify the investigative interest of particular individuals; reveal the scope and focus of the investigation; identify and tip off individuals who are of interest to law

enforcement; and provide suspects or targets the opportunity to destroy evidence and/or alter their behavior to avoid detection." *Id.* If, for example, the FBI were to release prematurely "information concerning physical or documentary evidence gathered during the pendency of this investigation, or information discussing, describing or analyzing the . . . evidence," it would "reveal the scope and focus of the investigation [and] the identity of subjects who are of investigative interest." *Id.* ¶ 87. Thus, the FBI's efforts would be hampered because subjects could take steps to elude detection, the identity of confidential sources may be revealed, and witnesses or sources may be subject to intimidation or other harm. *Id.*

Similarly, the premature release of information in Category 2, such as "case captions, serial numbers, identities of FBI field offices, dates of investigations, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines," *id.* ¶ 88, may hamper the FBI's efforts. The declarant explains that, "[i]n many instances, administrative information is contained at the beginning or end of correspondence or documents that fall within other categories of documents," such that their release also "reveal[s] the investigative interests of the FBI and could enable suspects to discern a 'road map' of the investigation." *Id.* For example, communications detailing the FBI's investigative activities are withheld so as not to "reveal . . . the investigative steps taken to obtain witness and source interviews; techniques and investigative methods used to compile and/or solicit information from various sources; and any potential or perceived challenges in the investigations." *Id.* ¶ 89.

Other documents, such as storage envelopes or standardized forms, are withheld because their premature disclosure could undermine this ongoing investigation. *See id.* ¶ 90. For example, the FBI relies on Exemption 7(A) to protect items such as an "envelope used to store records obtained from a confidential source" on which "handwritten notations . . . identify[ing]

dates, places and the persons who provided the information" appear.  *Id.* ¶ 91.  Other documents

contain instructions "setting out . . . investigative guidelines and requests for specific

investigative inquiries and affirmative taskings to various FBI field offices or to other

government or law enforcement agencies."  *Id.* ¶ 93.  If such details are released, "criminals

would be able to anticipate the FBI's plans and could avoid certain actions and/or activities."  *Id.*

      The Court concludes that release of information pertaining to the ongoing investigation of

the fraud scheme in which the plaintiff participated could reasonably be expected to interfere

with enforcement proceedings, not only the plaintiff's appeal but also the investigation and

prosecution of his co-conspirators.

### D.  Claims Against the Remaining Defendants

      In addition to the FBI, the plaintiff has identified seven additional defendants: Executive

Office for United States Attorneys, the United States Attorney's Office for the Western District

of New York, the United States Attorney's Office for the Eastern District of Missouri, the U.S.

Department of Homeland Security, and the United States Marshals Service.[6]  *See* Am. Compl. at

1 (caption).  The plaintiff's factual allegations regarding FOIA requests to these federal

government entities, *see* Am. Compl. ¶¶ 3, 7-8, 10, are vague at best.  Neither the Court nor the

defendants can determine from the pleadings what information the plaintiff seeks or the

responses, if any, he has received to his FOIA requests.  In these circumstances, and in light of

the plaintiff's complete failure to respond to the FBI's dispositive motion, the Court will dismiss

this civil action without prejudice.  If and when the plaintiff intends to pursue his remaining

claims, he may file a motion to reopen the case and he may seek leave to file a second amended

complaint.

---

[6]  The Court's June 3, 2015 Order, ECF No. 10, dismissed the United States Probation Office for the Western District of New York and the Administrative Office for United States Courts as parties to this action.

## IV. CONCLUSION

The FBI has demonstrated that it conducted a reasonable search for records responsive to the plaintiff's FOIA requests, that it properly withheld information under Exemptions 5, 7(A), 7(C), and 7(E), and that it has released all reasonably segregable information.  Accordingly, the Court will grant the FBI's motion in its entirety and dismiss this action without prejudice.  An Order consistent with this Memorandum Opinion is issued contemporaneously.

DATE: March 28, 2017                              /s/ *Beryl A. Howell*

                                                           BERYL A. HOWELL
                                                           Chief Judge